UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

          Plaintiff,                           Case No. 12-14663
                                               Honorable Thomas L. Ludington

v.

THOMAS S. MULHOLLAND, and
JAMES C. MULHOLLAND, JR.

          Defendants.

_____/

**OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS**

Defendants' motion to dismiss frames one question: Are the demand notes Defendants used to fund their business "securities" as defined in either the Securities Act of 1933 or the Securities Exchange Act of 1934? If the answer is yes, the case will proceed. If the answer is no, Plaintiff's complaint must be dismissed. Because the demand notes are securities as defined in the Securities Acts, Defendants' motion will be denied.

**I**

For many years, Defendants Thomas S. Mulholland and James C. Mulholland, Jr. operated a real estate business known as Mulholland Financial Services, Inc. (MFSI). MFSI's operations involved the buying, maintaining, and renting of real estate in Michigan. Defendants financed their real estate business through the issuance of demand notes, which they sold to friends, clients, relatives of clients, and word-of-mouth referrals.

Defendants' real estate business began to fail in the beginning of 2009. Defendants voluntarily dissolved MFSI in April 2006, but continued to raise investor funds through the defunct company. Plaintiff Securities and Exchange Commission alleges that in order to sustain

revenue, Defendants sought out "unsuspecting members of the public, whom they duped into investing" into MFSI even after the company was dissolved.  Pl.'s Resp. 1, ECF No. 13.

Plaintiff claims that during 2009, Defendants raised $2 million by selling demand notes to 75 investors, promising a 7% return on investment, all while they were losing money. According to Plaintiff, Defendants informed potential investors that their return on investment would be generated by profits from the defunct MFSI, and that the principal and accrued interest would be returned within 30 days of a written demand.  Plaintiff claims that many of these investors were retirees, most with limited investment experience — a fact Defendants used to their advantage in persuading the individuals to invest.  Then in February 2010, Defendants sought bankruptcy, and the 75 investors lost everything that they had exchanged for the demand notes.

This is not the first time Defendants have run into trouble.  In 1991, the State of Michigan's Corporation and Securities Bureau entered a consent order revoking Defendant James Mulholland's securities agent registration and fining him $8,000 for engaging in the offer and sale of unregistered promissory notes.  In 2004, James became associated with Invest Financial Corporation (Invest), a registered broker-dealer in Tampa, Florida.  Two years later, he was suspended and fined $10,000 by the Financial Industry Regulatory Authority, Inc. for offering and selling Mulholland Notes to customers without Invest's permission.  Also in 2006, the State of Michigan Office of Financial and Insurance Regulation revoked James' insurance license for offering and selling demand notes to his insurance clients.  During the time he was selling the Mulholland Notes that are the subject of this case, James was not registered with the SEC as a broker or dealer, nor was he associated with any entity that was.

In 2010, the State of Michigan Office of Financial and Insurance Regulation also revoked Defendant Thomas Mulholland's insurance license for offering and selling Mulholland Notes to his insurance clients. Like James, while he was selling the demand notes complained of here, Thomas was not registered with the SEC as a broker or dealer, and he was not associated with an entity that was.

On October 22, 2012, Plaintiff filed a complaint against Defendants alleging five counts of securities fraud related to the issuance of the demand notes. Defendants filed a motion to dismiss Plaintiff's complaint on January 4, 2013. Defendants argue that "[t]he sole basis for this Court's subject matter jurisdiction is the alleged violation of federal securities laws in connection with the 'offer and sale' of the [demand] notes." Defs.' Mot. 2, ECF No. 11. Defendants contend, however, that subject matter jurisdiction is lacking because the demand notes "are not securities, as a matter of law." *Id.*

## II

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement showing that the pleader is entitled to relief." To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (internal quotation marks omitted)). A claim is plausible when the plaintiff pleads factual content sufficient to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. When determining whether a plaintiff has stated a claim upon which relief can be granted, the court must construe the complaint in the light most favorable to the plaintiff, and accept all factual allegations as true. *Twombly*, 550 U.S. at 570.

Relevant to this action — claims involving securities fraud — where the instrument at issue is not a "security" as defined in the Securities Act of 1933 (Securities Act) or the Securities

Exchange Act of 1934 (Exchange Act) (together, the Securities Acts), the plaintiff's claims must be dismissed. *See Eagle Trim, Inc. v. Eagle-Picher Industries, Inc.*, 205 F. Supp. 2d 746, 753 (E.D. Mich. 2002) ("the Note is not a security under the [Securities] Act. Therefore, Plaintiffs' securities claim . . . must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).").

### III

Defendants contend that the demand notes involved in this action are not "securities," and therefore Plaintiff's claims alleging violation of the Securities Acts must be dismissed. Upon inspection, the demand notes are in fact "securities," and Defendants' motion to dismiss will be denied.

"The fundamental purpose undergirding the Securities Acts is 'to eliminate serious abuses in a largely unregulated securities market.' " *Reves v. Ernst & Young*, 494 U.S. 56, 60 (1990) (quoting *United Housing Found., Inc. v. Forman*, 421 U.S. 837, 849 (1975)). In defining the scope of the market that it wished to regulate, "Congress painted with a broad brush. It recognized the virtually limitless scope of human ingenuity, especially in the creation of 'countless and variable schemes devised by those who seek the use of the money of others on the promise of profits.' " *Reves*, 494 U.S. at 60–61 (quoting *SEC v. W.J. Howey Co.*, 328 U.S. 293, 299 (1946)). Accordingly, Congress determined that the best way to achieve its goal was "to define the term 'security' in sufficiently broad and general terms so as to include within that definition the many types of instruments that in our commercial world fall within the ordinary concept of a security." *Reves*, 494 U.S. at 61 (quoting *Forman*, 421 U.S. at 847–48).

Congress did not precisely cabin the scope of the Securities Acts.[1] Instead, it defined "security" as "sufficiently broad to encompass virtually any instrument that might be sold as an

---

[1] The Supreme Court has consistently held that "the definition of a security in § 3(a)(10) of the 1934 Act . . . . is virtually identical to the definition in the Securities Act of 1933 and, for present purposes, the coverage of the

- 4 -

investment." *Reves*, 494 U.S. at 61. Congress did not, however, "intend to provide a broad federal remedy for all fraud." *Id.* (quoting *Marine Bank v. Weaver*, 455 U.S. 551, 556 (1982)). Ultimately, the task has fallen to "the federal courts to decide which of the myriad financial transactions in our society come within the coverage of these statutes." *Reves*, 494 U.S. at 61 (quoting *Forman*, 421 U.S. 848). Both the Securities Act and the Exchange Act define "securities" to include "any note." 15 U.S.C. §§ 77b(a)(1), 78c(a)(10).

In *Reves*, the Supreme Court established the test for determining whether an instrument denominated as a "note" is a "security." Defendants assert that "the Supreme Court recognizes that most notes, in fact, are not securities." Defs.' Mot. 6. This assertion is inaccurate. Instead, the Supreme Court established, "[t]he test begins with the language of the statute; because the Securities Acts define 'security' to include 'any note,' *we begin with a presumption that every note is a security*." *Reves*, 494 U.S. at 65 (emphasis added). This presumption is rebuttable only if the note is, or sufficiently resembles, one of the categories of notes that the Supreme Court established is not a security.[2] If a note does not fall within that enumerated list, the presumption that all notes are securities can be rebutted in two other ways:

> [B]y a showing that the note bears a strong resemblance . . . to one of the enumerated categories of instrument. If an instrument is not sufficiently similar

---

two Acts may be considered the same." *Reves*, 494 U.S. at 61, n.1 (brackets omitted) (quoting *Forman,* 421 U.S. at 847, n.12).

[2] *See Exchange Nat. Bank of Chicago v. Touche Ross & Co.*, 544 F.2d 1126, 1138 (2d Cir. 1976), which established that the following types of notes are not "securities":

> [T]he note delivered in consumer financing, the note secured by a mortgage on a home, the short-term note secured by a lien on a small business or some of its assets, the note evidencing a "character" loan to a bank customer, short-term notes secured by an assignment of accounts receivable, or a note which simply formalizes an open-account debt incurred in the ordinary course of business (particularly if, as in the case of the customer of a broker, it is collateralized).

*See also Chemical Bank v. Arthur Anderson & Co.*, 726 F.2d 930, 939 (2d Cir. 1984) (adding to list "notes evidencing loans by commercial banks for current operations"). This list was adopted by the Supreme Court in *Reves*, 494 U.S. at 65.

to an item on the list, the decision whether another category should be added is to be made by examining the same factors.

*Id*. at 67.  The Supreme Court set forth four factors to consider when determining if a "note" sufficiently resembles one of the enumerated categories of non-security instruments so that it too should not be considered a security: (1) the motivations of the parties to the transaction; (2) the plan of distribution of the instrument; (3) the reasonable expectations of the public; and (4) whether some factor such as the existence of another regulatory scheme significantly reduces the risk of the instrument, thereby rendering application of the Securities Acts unnecessary.  *Id*. at 66–67.

The demand notes that Defendants issued do not fall neatly into any category recognized in *Reves* that are excluded from consideration as securities.  Accordingly, the four-factor test must be applied to determine if the notes so strongly resemble one of the enumerated categories that they nevertheless are not "securities."

**A**

The first factor for consideration is the motivation of the parties.  "If the seller's purpose is to raise money for the general use of a business enterprise or to finance substantial investments and the buyer is interested primarily in the profit the note is expected to generate, the instrument is likely to be a 'security.' "  *Id*. at 66.  If, on the other hand, the note "is exchanged to facilitate the purchase and sale of a minor asset or consumer good, to correct for the seller's cash-flow difficulties, or to advance some other commercial or consumer purpose . . . the note is less sensibly described as a 'security.'"  *Id*.

Defendants assert that the demand notes were issued to correct their cash flow difficulties, and that the lenders could not be viewed as seeking a profit because the notes were "simple loans with a fixed and conservative annual rate of return (i.e., 7%), and payment was due

- 6 -

in 30 days on written demand."  Defs.' Mot. 7.  Defendants conclude that these notes are not

sensibly described as "securities."  Further, the notes themselves[3] provide:

> THIS TRANSACTION REPRESENTS A LOAN AND DOES NOT
> CONSTITUTE AN OFFER OR OFFER TO SELL SECURITIES AS DEFINED
> IN THE CONTEXT OF THE UNIFORM SECURITIES ACT.
> FURTHERMORE, THIS NOTE WAS MADE FOR THE PURPOSES OF A
> LOAN AND IS ABSOLUTELY NOT BEING PROCURED FOR PURPOSES
> OF SPECULATION OR INVESTMENT OR TO RAISE CAPITAL FOR AN
> ENTERPRISE.  THE AMOUNT LOANED WILL NOT BE SUBJECT TO THE
> RISKS OR WILL IT ACCRUE AS A RESULT OF THE OPERATION OF AN
> ENTERPRISE.

Demand Note, Defs.' Mot. Ex. A.

Nevertheless, the first factor suggests the demand notes were "securities."  It is "the

representations made by the promoters, not their actual conduct, that determine whether an

interest is an investment contract (or other security)."  *SEC v. Lauer*, 52 F.3d 667, 670 (7th Cir.

1995) (citing *SEC v. United Benefit Life Ins. Co.*, 387 U.S. 202, 211 (1967); *SEC v. C.M. Joiner

Leasing Corp.*, 320 U.S. 344, 351 (1943)).  So while Defendants now maintain the issuance of

demand notes was to remedy cash-flow problems, the complaint alleges that Defendants "told

investors that they would use the investors' funds to purchase, maintain, and rent residential real

estate."  Pl.'s Compl. ¶ 29.  Defendants also candidly admit on the first page of their motion that

"Defendants financed their real estate business through the issuance of demand notes."  Defs.'

Mot. 1.

Further, according to the complaint, Defendant Thomas Mulholland "told investors

throughout 2009 that he and his brother ran a 'successful and profitable real estate operation.' "

---

[3] Although a copy of the demand notes was not attached to the pleadings, the copy attached to Defendants'
motion to dismiss can be considered without converting the motion into one for summary judgment.  *See* Fed. R.
Civ. P. 12(d).  While generally "[m]atters outside of the pleadings are not to be considered by a court in ruling on a
12(b)(6) motion to dismiss," *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997), "[d]ocuments that a
defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's
complaint and are central to her claim."  *Id.* at 89 (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987
F.2d 429, 431 (7th Cir. 1993)).  The demand notes are referenced multiple times in Plaintiff's complaint, and
certainly are central to its claim.  Accordingly, a copy of the notes will be considered for purposes of this opinion.

Pl.'s Compl. at ¶ 31.  Noted above, the Court must construe the complaint in the light most favorable to the plaintiff, and accept all factual allegations as true.[4]  *Twombly*, 550 U.S. at 570. It follows that for purposes of this opinion, Defendants issued the demand notes "to raise money for the general use of a business enterprise."  *Reves*, 494 at 66.

There can be little doubt that the lenders' primary motivation here was monetary gain. Defendants argue "the lenders could not be viewed as seeking a profit on the notes," but offer no other explanation for why the lenders provided Defendants with $2 million.  As the Supreme Court noted in *Reves*, where it held the notes in question were securities, "purchasers bought [the notes] in order to earn a profit in the form of interest."  *Id*. at 68.  The Court emphasized that "by 'profit' in the context of notes, we mean 'a valuable return on an investment,' which undoubtedly includes interest."  *Id*. at 68, n.4.  It follows that the lenders intention when securing a demand note was to claim the 7% interest as profit.  Under *Reves*, this factor supports the conclusion that the demand notes were "securities."

**B**

The second *Reves* factor involves evaluating the note's plan of distribution to determine whether it is an instrument in which there is "common trading for speculation or investment." *Id*. at 66.  Although there is no allegation that the instruments involved here were traded on a public exchange, to establish the "common trading" element, Plaintiff need only demonstrate the

---

[4] Defendants argue that Plaintiff's "vague, generalized allegations" should not be considered for purposes of ruling on their motion.  Defs.' Reply 4 (citing *Iqbal*, 556 U.S. at 675–80).  However, as established by the Supreme Court, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Id*. at 678.  The Court went on to make clear, "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, *a court should assume their veracity* and then determine whether they plausibly give rise to an entitlement to relief."  *Id*. at 679 (emphasis added).

Contrary to Defendants' argument, the Court is not taking as true legal conclusions that Defendants violated securities regulations.  Instead, as instructed by the Supreme Court, the Court will take as true the factual allegations that Plaintiff has offered to support its claims (i.e., Defendants misrepresented the health of their company and the use of investors' funds when advertising demand notes).

demand notes were offered and sold "to a broad segment of the public." *Id*. at 68. Accordingly, it must be determined whether the 75 investors constitute such a group.

There is no set number of investors that makes up a "broad segment of the public." For example, in *Deal v. Asset Mgmt. Group*, No. 92-187, 1992 WL 212482, at *4 (N.D. Ill. 1992), the court concluded that a plan of distribution involving "an offering to six investors who do not appear to be linked in any way except as customers of [Defendant]" was enough to constitute a "broad segment of the public." However, in M*cNabb v. SEC*, 298 F.3d 1126, 1132 (9th Cir. 2002), the Ninth Circuit held that "six customers in total does not constitute a 'broad segment of the public.' " *See also SEC v. R.G. Reynolds Enterprises, Inc.*, 952 F.2d 1125, 1131 (9th Cir. 1991) ($2 million raised from at least 148 investors "were offered and sold to a broad segment of the public") (internal quotations omitted).

Regardless of the number of investors, this factor must be weighed against "the purchasing individual's need for the protection of the securities laws." *McNabb*, 298 F.3d at 1132. Because the investors in *McNabb* were six individuals, not sophisticated financial institutions, the court held that "the protection provided by the Securities Acts would benefit the individual investors in this case." The court then concluded "it appears this factor does not support either [parties'] position." *See also SEC v. Global Telecom Services, LLC*, 325 F. Supp. 2d 94, 114–15 (D. Conn. 2004) ("Where the notes are sold to individuals rather than 'sophisticated institutions,' common trading has been found.") (quoting *Stoiber v. SEC*, 161 F.3d 745, 751 (D.C. Cir. 1998)).

In addition, where the borrower places "no limitations on who could purchase the notes, offering them to any member of the general public who would make the investment . . . [t]he broad availability of the notes . . . tips this factor strongly in favor of classifying the note as a

security." *SEC v. Wallenbrock*, 313 F.3d 532, 539 (9th Cir. 2002).  *See also Wright v. Downs*, 972 F.2d 350, at *3 (6th Cir. 1992) (unpublished) (notes sold to 200 investors with "no restrictions as to purchasers" were "offered and sold to a broad segment of the public.").

Guided by these principles, application of the second *Reves* factor supports Plaintiff's position.  The 75 individual investors were not sophisticated financial institutions, but individuals in need of the protection provided by the Securities Acts.  These individuals were Defendants' clients, friends, relatives of their clients, word-of-mouth referrals, and referrals from an accountant.  *See* Defs.' Mot. 9.  Defendants do not appear to have excluded any individual that had the ability to pay.  While the 75 investors in this case may not constitute a "broad segment of the public" when considered in a vacuum, weighed against the fact that those investors were all individuals, and there was no apparent limitation on who could purchase the demand notes, the second *Reves* factor is satisfied.

Defendants rely on four cases to support their argument that the 75 investors do not constitute a broad segment of the public.[5]  But each case is distinguishable.  In fact, in each of those four cases, six notes or less were at issue.  *LeBrun v . Kuswa*, 24 F. Supp. 2d 641, 642 (E.D. La. 1998), involved six notes that were sold to friends and family, and as such did not include an "offering or sale to a 'broad segment of the public.'"  Similarly, *Ford v. Spartin*, No. 92-696, 1992 WL 297432, at *1 (D. Md. July 23, 1992), involved only three promisory notes.  In *Prochaska & Assocs., Inc. v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 798 F. Supp. 1427, 1431 (D. Neb. 1992), the court unsurprisingly concluded that four promissory notes sold to only one individual were not "offered and sold to a broad segment of the public."  Finally, in *Premier*

---

[5] A fifth case cited by Defendants, *Tab P'ship v. Grantland Fin. Corp.*, 866 F. Supp. 807 (S.D.N.Y. 1994), cannot be properly assessed because the court's opinion established, "The facts relating to this case are set forth in the [sic] of Judge Conboy dated June 30, 1993 ("Order"), discussed *infra*.  Familiarity with the Order is assumed."  *Id.* at 809.  No other facts were provided.

*Microwave Corp. v. Comtech Telecomm. Corp.*, No. 88-2570, 1991 WL 12430, at *1 (S.D.N.Y. Jan. 28, 1991), the court held that the issuance of a single note to facilitate the sale of corporate assets did not constitute an offering to a "broad segment of the public."

Because the number of investors in this case is, at a minimum, over twelve times the number in the cases Defendants rely on, all 75 investors were individuals rather than sophisticated financial institutions, and there were no limitations on who could purchase the demand notes, the second *Reves* factor weighs heavily in favor of considering Defendants' demand notes "securities."

## C

The third *Reves* factor looks to whether the public would view the demand notes as investments. *Reves*, 494 U.S. at 68–69. The Supreme Court has "consistently identified the fundamental essence of a 'security' to be its character as an 'investment.'" *Id*. at 69. Important for this analysis is "the reasonable expectation of the pubic who invested," and whether they believed they would "make money through investing." *Demoss v. Kretz*, No. 07-0405, 2009 WL 47142, at *5 (M.D. Tenn. Jan. 7, 2009).

Plaintiff's complaint alleges as follows:

Several investors sold their holdings within variable annuities and IRAs to purchase a [demand] Note. [James] Mulholland persuaded one investor to invest proceeds from a life insurance policy held by her deceased aunt. [Thomas] Mulholland persuaded a married couple to invest a majority of the proceeds from the sales of their home and vacation cottage during the construction of their new home, all of which they needed to complete the construction. Several of the investors used substantially all of their savings to purchase their [demand] Notes.

As a part of the [Defendants'] effort to recruit investors, they held themselves out as brokers. [Thomas] Mulholland also represented to at least one investor that the [Defendants'] company, MFSI, was "similar to AG Edwards," the large U.S. brokerage firm. They also represented on their business cards, which they had distributed to at least one investor in 2009, that they were "Chartered Financial

- 11 -

> Consultants" who offered various services, including "Real Estate Investments,"
> "IRAs," and "Life Insurance."

Pl.'s Compl. ¶¶ 25–27.  These factual allegations, taken as true, along with the fact that each demand note specifically indicated it would provide a guaranteed return-on-investment of 7%, lead to the conclusion that the public would, and did, view the notes as investments.

Defendants again rely on *LeBrun*, in addition to *Campbell v. C.D. Payne and Geldermann Sec., Inc.*, 894 S.W.2d 411 (Tex. App. Ct. 1995), for the proposition that the public would not have viewed their demand notes as investments.  As before, the cases Defendants rely upon are distinguishable from the one at bar.  In *LeBrun*, lenders specifically "agreed to provide a loan" to the defendant's business, and "Agreements to Borrow Monies" were the documents that were executed.  24 F. Supp. 2d at 642.  While the demand notes in this case indicated that they were loans and not an investment, the Supreme Court held that "Congress' purpose in enacting the securities laws was to regulate *investments*, in whatever form they are made and by whatever name they are called."  *Reves*, 494 U.S. at 61 (emphasis in original).  Accordingly, it does not matter that the demand notes indicated they were loans and not investments, because they operated as a typical investment would, unlike the loans in *LeBrun*.

*Campbell*, a case before the Court of Appeals of Texas, is also distinguishable.  It was brought under the Texas Securities Act, not the federal Securities Acts implicated here.  However, the court did apply the *Reves* factors to conclude, "The record also demonstrates that these notes were not of such a nature that would lead the general public to consider them as securities."  *Campbell*, 894 S.W.2d 411, 418–19.  The promissory notes were like those here, in that the plaintiff "did not expect a 'profit' in the sense of capital appreciate or participation in earnings; instead, she expected only a fixed return in the form of interest on the notes."  *Id.* at 418.

However, the reasoning of the Supreme Court in *Reves* is more persuasive than that of the Court of Appeals of Texas.  As emphasized above, the Supreme Court held that "'profit' in the context of notes, [means] 'a valuable return on an investment,' which undoubtedly includes interest."  *Reves*, 494 U.S. at 68, n.4.  So while Defendants' lenders would expect no more than the 7% interest as profit, that is more likely considered a return on an investment rather than an ancillary benefit to be earned from loaning money to Defendants' business.

The 75 lenders in this case invested money expecting to get more in return.  In fact, they were guaranteed to get a 7% return on their investments, which Defendants maintained would be generated by profits from MFSI.  This is enough to satisfy the third *Reves* factor.  The demand notes would be properly viewed as investments by the public, and according to Plaintiff's allegations, were by the investors in this case.

**D**

The fourth and final *Reves* factor looks to whether "some factor . . . significantly reduces the risk for the instrument, thereby rendering application of the Securities Acts unnecessary."  *Id.* at 67.  As Plaintiff points out, this factor favors Defendants "only if they can demonstrate there is a scheme of regulation involved that substantially eliminates the investors' investment risk, and thus renders unnecessary the protections provided by the securities laws."  Pl.'s Resp. 12–13.

This demonstration Defendants have not made.  In fact, Defendants concede the point: "Finally, and candidly, this fourth factor is only relevant to a small number of notes, and it is very difficult to predict in advance whether it should apply to any particular transaction.  At any rate, the notes at issue are not subject to any particular regulatory scheme."  Defs.' Mot. 11.

Although Defendants go on to assert that the investors can pursue claims against them for breach of the notes or fraudulent inducement in state court, they miss the point.  In *Reves*, the

Supreme Court determined that there was "no risk-reducing factor to suggest that these instruments are not in fact securities" where the notes were "uncollateralized and uninsured" and "would escape federal regulation entirely if the Acts were not held to apply." *Reves*, 494 U.S. at 69. The Supreme Court made no mention of state-law remedies. Likewise, the demand notes in this case were uncollateralized and uninsured, and Defendants do not identify any regulatory scheme that would apply if the Securities Acts do not. This fourth factor weighs in favor of the demand notes being deemed securities as well.

The demand notes issued by Defendants to support their business in 2009 were "securities" as defined by the Securities Acts, and their motion to dismiss Plaintiff's complaint will be denied.

**IV**

Accordingly, it is **ORDERED** that Defendants' motion to dismiss, ECF No. 11, is **DENIED**.

Dated: March 13, 2013

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

<div style="border:1px solid black; background:#cccccc;">

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 13, 2013.

s/Tracy A. Jacobs
TRACY A. JACOBS

</div>